**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

RED HOOK LOBSTER POUND, LLC,

Plaintiff,

v.

RED HOOK CAJUN SEAFOOD & BAR INC. and RED HOOK CRAB SHACK LLC,

Defendants.

Case No. 5:21-cv-153

JURY DEMANDED

**ORIGINAL COMPLAINT**

Plaintiff Red Hook Lobster Pound LLC ("Red Hook Lobster" or "Plaintiff"), by and through its attorneys, for its Complaint against Red Hook Cajun Seafood & Bar Inc. (hereinafter, "Red Hook Seafood") and Red Hook Crab Shack LLC (hereinafter "Red Hook Seafood–San Antonio") (collectively "Defendants") alleges as follows:

## I. SUMMARY OF THE ACTION

1. This is an action for trademark infringement, unfair competition, contributory infringement and unfair competition, and cybersquatting under the Federal Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 et. seq. (the "Lanham Act").

2. Plaintiff owns the registered trademark for RED HOOK LOBSTER POUND. Defendants are willfully and continuously infringing the RED HOOK LOBSTER POUND mark and unfairly competing with Red Hook Lobster through Defendant's use and operation of their "Red Hook Seafood" restaurants while also "squatting" on a confusingly similar domain name to divert Internet traffic from Plaintiff's website.

## II. PARTIES

3. Plaintiff Red Hook Lobster Pound LLC is a New York limited liability company with its principal place of business at 284 Van Brunt Street, Brooklyn, New York 11231.

4. Defendant Red Hook Cajun Seafood & Bar Inc. (hereafter "Red Hook Seafood") is a Tennessee corporation with its principal place of business at 6105 Stage Road, Bartlett, Tennessee 38134 and operating under the names "Red Hook Seafood," "Red Hook Seafood & Bar" and "Red Hook Cajun Seafood & Bar." Red Hook Seafood may be served with process through its Registered Agent, Sun Wai Joe Ng, 6105 Stage Road, Bartlett, Tennessee 38134-8313. Red Hook Seafood is a franchisor of a chain of restaurants operating under the "Red Hook Seafood" name.

5. Defendant Red Hook Crab Shack LLC ("Red Hook Seafood–San Antonio") is a Texas limited liability company with its principal place of business at 6759 NW Loop 410, San Antonio, Texas 78238 and operating under the names "Red Hook Seafood," "Red Hook Seafood & Bar" and "Red Hook Cajun Seafood & Bar." Red Hook Seafood–San Antonio may be served with process through its Registered Agent, Youqin Lin, 6759 NW Loop 410, San Antonio, Texas 78238. Red Hook Seafood–San Antonio is a franchisee of Red Hook Seafood.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. §1121.

7. The exercise of both general and specific personal jurisdiction over Defendant Red Hook Seafood is proper because, upon information and belief, Red Hook Seafood has entered into a franchise agreement with Defendant Red Hook Seafood–San Antonio, which is registered in Texas and operates a restaurant in the Western District of Texas.

8. The exercise of both general and specific personal jurisdiction over Defendant Red Hook Seafood–San Antonio is proper because, upon information and belief, Red Hook Seafood–San Antonio is a limited liability company registered in the state of Texas, and which owns and operates a restaurant in San Antonio, Texas.

9. Defendants' operation of the Red Hook Seafood restaurant within the Western District of Texas gives rise to Plaintiff's cause of action, as Defendants market, promote, advertise, and offer their restaurant services under the infringing Red Hook Seafood mark in this district.

10. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391.

## IV. FACTUAL BACKGROUND

### A. RED HOOK LOBSTER HAS RECEIVED VALUABLE NATIONWIDE AND GLOBAL RECOGNITION AND OWNS VALUABLE COMMON LAW RIGHTS IN THE RED HOOK LOBSTER POUND MARK

11. Plaintiff owns and operates the world-renowned Red Hook Lobster Pound restaurant located in Brooklyn, New York. Red Hook Lobster Pound was founded by Susan Povich and Ralph Gorham in 2009, and has been using the RED HOOK LOBSTER POUND name and mark since then ("RED HOOK LOBSTER POUND Mark"). The restaurant was inspired by family vacations to Maine, where Ms. Povich spent summers with family growing up.

12. Since its founding, Red Hook Lobster has expanded to a second location within UrbanSpace Vanderbilt, one of the most popular food halls in New York City, near Grand Central Station.

13. Red Hook Lobster also has a food truck, affectionately nicknamed "Big Red." Big Red provides event catering and attends outdoor food festivals in New York (Long Island), New Jersey, and Connecticut. In a typical year, during outdoor event season Big Red is featured at events every weekend. The RED HOOK LOBSTER POUND Mark is prominently displayed on both doors, one side, and the back of the truck.

14. Additionally, Red Hook Lobster hosts stalls at Brooklyn Flea, an outdoor flea and vintage market, and Smorgasburg, the largest open-air food market in America. Both markets are international travel destinations: Brooklyn Flea has been listed as one of the best flea markets in

the U.S. in *Fodor's Travel Guide,* HGTV, *Travel + Leisure,* and others, and one of the best flea markets in the world in *Jetsetter* and *Budget Travel.*

15. From September 2016 to February 2017, Red Hook Lobster also hosted a stall at Smorgasburg Los Angeles in Los Angeles, California.

16. In 2010, Ms. Povich licensed the RED HOOK LOBSTER POUND brand to her cousin, Doug Povich, who operated two Red Hook Lobster food trucks in Washington, D.C. until July 2020, when they discontinued operation due to the Coronavirus pandemic. Doug Povich is considered one of the fathers of the DC food truck scene, and in 2010 the D.C. Red Hook Lobster food truck was the first food truck to receive a starred rating in the *Washington Post Fall Dining Guide.*

17. Red Hook Lobster hopes to re-open the food trucks in D.C. in the near future.

18. Red Hook Lobster began receiving national attention immediately after its opening. Only weeks after the original Red Hook Lobster location opened in 2009, it received a write-up in *The New York Times.* Since then, the notoriety of Red Hook Lobster has only increased.

19. In 2013, Red Hook Lobster's Big Red was named the "#1 Food Truck in America" by *The Daily Meal*, a website that provides recipes, vacation destinations, cooking tips, and restaurant reviews featuring restaurants across the United States. After receiving this honor, Ms. Povich was featured on the Today show on June 17, 2013 to discuss the Red Hook Lobster restaurant and food truck.

20. The list of high-profile national publications that have rated, reviewed, profiled, or included Red Hook Lobster in "best-of" lists or activity guides includes *Zagat, The New York Times, Glamour, Eater, The Wall Street Journal, Thrillist, Food Network, Tripadvisor* and many others.

21. Beyond print media, Red Hook Lobster was also featured on restaurant and travel show *Eat St.*, a Canadian reality television show in which comedian and host James Cunningham tours North America to find the most inventive meals served from food trucks. "Claws for Celebration," the episode featuring Red Hook Lobster, aired on Food Network Canada and Cooking Channel in the United States on July 24, 2014.

22. More recently, celebrity chef Bobby Flay and his daughter Sophia visited Red Hook Lobster on Season 1, Episode 2 of *The Flay List*, a Food Network restaurant show in which the culinary celebrity family visits their favorite restaurants. The episode aired nationally on September 19, 2019 on The Food Network, and is available to stream on Hulu, or purchase and stream on Amazon Prime and Google Play. (The episode, "Lobster" is listed as Episode 5 on streaming services).

23. Red Hook Lobster receives visitors from across the United States. During a typical year, Ms. Povich estimates that 25% of their customers are from out of state.

24. The publicity that Red Hook Lobster has received has not been limited to the United States. Red Hook Lobster has been featured in several airline magazines, including those published by LATAM Airlines, the largest airline in Latin America, Alitalia, the largest Italian airline, and Swiss International Air Lines in Switzerland. Red Hook Lobster has also been featured in international publications and travel guides, including *Lonely Planet*, *Fodor's Travel*, *Ett Annat New York*, a Swedish travel guide by Daniel Svanberg, and many others.

25. Due in part to the expansive publicity received through national and global media outlets since its founding, Red Hook Lobster has hosted diners from across the United States and the world.

26. Red Hook Lobster receives a significant number of international diners; during a typical year, Ms. Povich estimates that approximately 25% of their diners are visiting from abroad.

27. Through Plaintiff's longstanding and continuous use and promotion, the RED HOOK LOBSTER POUND Mark has become distinctive and is widely recognized as a designation of the source of the goods and services Plaintiff offers.

28. As a result of Plaintiff's longstanding and continuous use and promotion of the RED HOOK LOBSTER POUND Mark, Plaintiff has developed significant and valuable goodwill and common law rights in the mark throughout the entire United States.

29. The RED HOOK LOBSTER POUND Mark is distinctive, and distinguishes Plaintiff and its goods and services from other competitors who sell seafood and operate seafood restaurants.

30. As a result of its national and global prominence, and the strength of the RED HOOK LOBSTER POUND Mark, Red Hook Lobster is regularly contacted by parties interested in franchising the restaurant and licensing the mark. Red Hook Lobster has already received multiple serious offers to franchise the restaurant beyond the Northeast to the entire United States, and indeed worldwide. These included a 2019 offer from Fransmart, the franchise development company responsible for the national franchising of successful restaurants including Five Guys Burgers & Fries, Qdoba Mexican Grill, The Halal Guys, and many others.

31. Red Hook Lobster intends to franchise the restaurant and license the RED HOOK LOBSTER POUND name and mark with a franchise partner that is closely aligned with its values, quality, and vision for expansion. However, Red Hook Lobster's first priority is maintaining and continuing to grow the value and goodwill of the brand, which it has carefully cultivated for the past decade.

**B.     PLAINTIFF'S REGISTERED RED HOOK LOBSTER POUND MARK IS INCONTESTABLE, FAMOUS AND VALUABLE**

32.     In addition to its valuable common law rights, Red Hook Lobster owns U.S. Trademark Registration No. 4,001,120, for RED HOOK LOBSTER POUND and Design for "wholesale and retail store services and on-line retail and wholesale store services featuring seafood" and "restaurant services featuring seafood" (hereinafter "RED HOOK LOBSTER POUND & DESIGN Mark") (the RED HOOK LOBSTER POUND Mark and RED HOOK LOBSTER POUND & DESIGN Mark will be collectively referred to as the "RED HOOK LOBSTER POUND Marks").



33.     U.S. Trademark Registration No. 4,001,120 is registered on the Principal Register of the U.S. Patent and Trademark Office and therefore is entitled to the legal presumptions that: the mark is valid; Red Hook Lobster is the owner of the mark; and that Red Hook Lobster has the exclusive right to use the mark in commerce on or in connection with "wholesale and retail store services and on-line retail and wholesale store services featuring seafood" and "restaurant services featuring seafood."

34.     The United States Patent and Trademark Office issued U.S Trademark Registration No. 4,001,120, on July 26, 2011. A true and correct copy of the registration certificate is attached hereto as **Exhibit A**.

35. U.S Trademark Registration No. 4,001,120 is incontestable pursuant to 15 U.S.C. § 1065.

**C. DEFENDANTS' INFRINGING USE OF "RED HOOK" (AND VARIATIONS) TRADES ON PLAINTIFF'S HARD EARNED SUCCESS AND GOODWILL**

36. Red Hook Seafood is a restaurant chain established in 2019, with one location in San Antonio, Texas and five locations in Tennessee.

37. Upon information and belief, Red Hook Seafood is the franchisor of the Red Hook Seafood restaurant chain, and Red Hook Seafood–San Antonio is one of its franchisees.

38. Upon information and belief, Red Hook Seafood is the franchisor of at least five other Red Hook seafood restaurant chain locations throughout Tennessee in Bartlett, Jackson, Poplar, Winchester and Wolfchase (hereafter, collectively, the "Tennessee Franchisees").

39. Red Hook Seafood and its franchisees are not in any way affiliated with or licensed by Red Hook Lobster.

40. Defendants advertise all six restaurant locations at www.redhookseafood.com.

41. In many places the website advertises the restaurants as simply "Red Hook Seafood & Bar," "Red Hook Seafood" and "Red Hook" without the "Cajun" modifier that appears in Red Hook Seafood's corporate name.

42. Defendants' logo and website text emphasizes the phrase "Red Hook" as the most prominent part of the restaurant name.

43. Defendants and the Tennessee Franchisees are using "Red Hook," "Red Hook Seafood" (and variations), and the domain name "redhookseafood.com" without Plaintiff's authorization.

44. Upon information and belief, Defendants' domain name was registered in 2019, over a decade after Red Hook Lobster registered its domain name in 2008.

45. Defendants' website includes information about franchising opportunities for the brand, and aggressively promotes the "Red Hook Seafood" name in an attempt to further franchise the infringing brand in other locations across the United States.

46. For example, according to a recent article in the *San Antonio Business Journal*, Defendants are currently leasing a space in Live Oak, Texas just northeast of San Antonio, where they intend to open a second Red Hook location in Texas.

47. The email addresses for each of defendants' restaurants are formed by the city name followed by "@redhookseafood.com." Thus, for example, the email address of Red Hook Seafood–San Antonio is sanantonio@redhookseafood.com.

48. Upon information and belief, Defendant Red Hook Seafood runs and maintains the website and email servers for Red Hook Seafood–San Antonio and the Tennessee Franchisees.

49. Upon information and belief, Defendants have no connection to any location named "Red Hook," or any other connection to the phrase in any way.

50. Upon information and belief, neither lobsters nor crabs are caught using hooks (certainly not red hooks), but rather lobster or crab traps.

51. Upon information and belief, Defendants and the Tennessee Franchisees deliberately adopted and are using the "Red Hook" name to trade upon the hard earned renown and goodwill of Red Hook Lobster Pound.

### D. DEFENDANTS' INFRINGING USE OF "RED HOOK"(AND VARIATIONS) CAUSES CONFUSION AND INJURES PLAINTIFF

52. Defendants' and the Tennessee Franchisees' use of "Red Hook" and variations as a corporate name, trademark, domain name and social media handles is likely to cause confusion with Plaintiff's RED HOOK LOBSTER POUND Marks.

53. Defendants' and the Tennessee Franchisees' infringing conduct, described herein, is likely to cause confusion, to cause mistake, and/or to deceive consumers, at least as to some affiliation, connection or association of Defendants and the Tennessee Franchisees with Plaintiff, or as to the origin, sponsorship, or approval of the products and/or services of Defendants and the Tennessee Franchisees by Plaintiff.

54. Defendants' and the Tennessee Franchisees' infringing conduct, described herein, falsely indicates to consumers that the Defendants' and Tennessee Franchisees' goods and services are affiliated, connected or associated with Red Hook Lobster, or are sponsored, endorsed, or approved by Red Hook Lobster, or are in some manner related to Red Hook Lobster.

55. Defendants and the Tennessee Franchisees are using the goodwill of the RED HOOK LOBSTER POUND Marks to divert Internet traffic to their website and confuse customers and potential business partners and franchisees for their own financial gain.

56. Defendants' and the Tennessee Franchisees' unauthorized use of "Red Hook," "Red Hook Seafood" and variations in their domain name, website, and social media handles is

likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection or association of Defendants' and the Tennessee Franchisees' domain name with Red Hook Lobster, or as to the origin, sponsorship, or approval of the domain name and related website's products and services.

57. Defendants' and the Tennessee Franchisees' unauthorized use of "Red Hook," "Red Hook Seafood," and variations in their domain name is likely to cause confusion, to cause mistake, and/or to deceive franchisees and potential franchisees of the parties, and deprive Red Hook Lobster of franchising opportunities through the diversion of Internet traffic of potential franchisees to Defendants' and the Tennessee Franchisees' website.

58. Defendants' infringing conduct, described herein, enables Defendants and the Tennessee Franchisees to trade on and receive the benefit of goodwill in the RED HOOK LOBSTER POUND Marks, which has been built up at great labor and expense over more than a decade. Defendants' and the Tennessee Franchisees' use of this mark in the manner described above also enables Defendants and the Tennessee Franchisees to gain acceptance for their goods and/or services, not solely on their own merits, but on the reputation and goodwill of Plaintiff and the RED HOOK LOBSTER POUND Marks.

59. Defendants' and the Tennessee Franchisees' infringing conduct, described herein, prevents Plaintiff from controlling the nature and quality of goods and/or services provided as a result of those uses and place the valuable reputation and goodwill of Red Hook Lobster in the hands of Defendants, over whom Plaintiff has no control.

60. Upon information and belief, as franchisor of the Red Hook Seafood–San Antonio and the Tennessee Franchisees, Defendant Red Hook Seafood provided its franchisees with

unauthorized licenses to use "Red Hook," "Red Hook Seafood," and other infringing variations as corporate names and trademarks in the various locations.

61. Defendants' use of "Red Hook," "Red Hook Seafood" and variations has caused actual confusion among customers and potential customers.

62. For example, in late November 2020, a waitress at Red Hook Seafood–San Antonio received a $2,000.00 tip from a customer. However, the restaurant claimed that it was unable to process the tip because of a $500 transaction maximum for tips left by card.

63. Local news outlets reported the story, and by December 2, 2020, the story had received national attention.

64. Immediately after the story of the mistreated waitress became public, Red Hook Lobster began receiving one-star reviews and derogatory messages on review platforms and social media. These negative reviews and messages explicitly referenced the incident with the waitress at the Red Hook Seafood–San Antonio restaurant, and criticized the decision not to pay the entirety of the tip.

65. Upon information and belief, the negative reviews and messages Red Hook Lobster received in December 2020 are a direct result of customers' actual confusion between Defendants and Red Hook Lobster.

**COUNT I:**
**TRADEMARK INFRINGEMENT IN VIOLATION OF SECTION 32 OF THE LANHAM ACT, 15 U.S.C. § 1114**

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65, *supra*, as if fully stated herein.

67. The acts of Defendants complained of herein constitute infringement of Plaintiff's federally registered RED HOOK LOBSTER POUND & DESIGN Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

68. Plaintiff is the exclusive owner of the federally registered RED HOOK LOBSTER POUND & DESIGN Mark.

69. Plaintiff's exclusive rights in and to the RED HOOK LOBSTER POUND & DESIGN Mark predate any rights that Defendants could establish in and to any mark that consists of "Red Hook" in whole and/or in part.

70. Plaintiff's RED HOOK LOBSTER POUND & DESIGN Marks are distinctive and valuable.

71. Plaintiff's RED HOOK LOBSTER POUND & DESIGN Mark identifies Plaintiff as the exclusive source of products offered under the RED HOOK LOBSTER POUND & DESIGN Mark and, therefore, the Plaintiff's RED HOOK LOBSTER POUND & DESIGN Mark has acquired distinctiveness.

72. Defendants' use of "Red Hook," "Red Hook Seafood," and variations in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products and services, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants are Plaintiff, and/or whether Defendants are a licensee, authorized distributor, and/or affiliate of Red Hook Lobster.

73. Defendants' use of "Red Hook," "Red Hook Seafood," and variations in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products and services, as alleged, herein is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants and/or Defendants' products and services originate with, and/or are sponsored or approved by, and/or offered under a license from, Plaintiff or vice versa.

74. Based on Plaintiff's longstanding and continuous use of its RED HOOK LOBSTER POUND & DESIGN Mark in United States commerce, as well as the federal registration of the RED HOOK LOBSTER POUND & DESIGN Mark, Defendants had constructive knowledge of Plaintiff's superior rights in and to the RED HOOK LOBSTER POUND & DESIGN Mark when Defendants adopted and began using "Red Hook," "Red Hook Seafood," and variations as part of their bad-faith scheme to confuse and deceive consumers, as alleged, herein.

75. Upon information and belief, Defendants adopted and used "Red Hook," "Red Hook Seafood," and variations in furtherance of Defendants' willful, deliberate, and bad-faith scheme to trade upon the extensive consumer goodwill, reputation, fame, and commercial success of products and services that Plaintiff offers under its RED HOOK LOBSTER POUND & DESIGN Mark.

76. Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized conduct to which Defendants are not entitled at law or in equity.

77. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. Plaintiff has no adequate remedy at law.

78. The acts of Defendants complained of herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**COUNT II:**
**UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)**

79. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78, *supra*, as if fully stated herein.

80. The acts of Defendants complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin, in violation of 15 U.S.C. § 1125(a)(1)(A). Specifically, Defendants' use of "Red Hook," "Red Hook Seafood," and variations is likely to cause confusion, and to cause mistake, and to deceive customers and potential customers as to the affiliation, connection, or association of Defendants with Plaintiff.

81. Defendants have deceived, misled, and confused customers as to their association with Plaintiff, and in doing so have traded off of Plaintiff's reputation and goodwill.

82. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

83. Plaintiff has no adequate remedy at law.

## COUNT III: CONTRIBUTORY INFRINGEMENT AND UNFAIR COMPETITION

84. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 83, *supra*, as if fully stated herein.

85. The acts of the Tennessee Franchisees described herein also constitute infringement of Plaintiff's federally registered RED HOOK LOBSTER POUND & DESIGN Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114 as well as unfair competition, false endorsement, false association, and/or false designation of origin, in violation of 15 U.S.C. § 1125(a)(1)(A).

86. Defendant Red Hook Seafood is contributorily liable for the infringement and unfair competition of Red Hook Seafood–San Antonio and the Tennessee Franchisees. Defendant Red Hook Seafood intentionally induced Red Hook Seafood–San Antonio and the Tennessee Franchisees to infringe Plaintiff's federally registered RED HOOK LOBSTER POUND & DESIGN Mark and to engage in unfair competition, false endorsement, false association, and/or

false designation of origin. Further, Defendant Red Hook Seafood had actual knowledge of the infringing conduct and unfair competition of its franchisees, and continued to use its corporate resources to advertise and promote Red Hook Seafood–San Antonio and the Tennessee Franchisees.

**COUNT IV:**
**VIOLATION OF FEDERAL ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT**

87. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 86, *supra*, as if fully stated herein.

88. The acts of Defendants complained of herein constitute a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

89. Specifically, Defendants are, in bad faith and with an intent to profit, using the goodwill of the RED HOOK LOBSTER POUND Marks to divert Internet traffic to its websites and confuse consumers for their own financial gain.

## V. JURY DEMAND

Plaintiff Red Hook Lobster Pound LLC demands a trial by jury of all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. A preliminary and permanent injunction that prohibits Defendants, their agents, servants, employees, attorneys, assigns and all persons in concert or participation with them, from using and/or franchising or licensing others to use “Red Hook” “Red Hook Seafood,” “Red Hook Cajun Seafood,” “Red Hook Seafood & Bar,” or any variation thereof, as a mark, name, or any other source of indicia in connection with the marketing or sale of their products and services.

B. A preliminary and permanent injunction that prohibits Defendants, their agents, servants, employees, attorneys, assigns and all persons in concert of participation with them, from

using and/or franchising or licensing others to use "Red Hook Seafood" or any variation thereof in any domain names, email addresses or social media handles.

C. A judgment and order requiring Defendants to pay Plaintiff damages in an amount sufficient to compensate Plaintiff for injury it has sustained as a consequence of Defendants' and the Tennessee Franchisees' unlawful acts and disgorging Defendants' profits earned as a result of these unlawful acts;

D. A judgment and order requiring Defendants to pay Plaintiff maximum statutory damages under the Lanham Act in the amount of $100,000.00 for each violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), for a minimum amount of $100,000.00;

E. A judgment and order finding that this case is an exceptional case and requiring Defendant to pay all of Plaintiff's reasonable attorneys' fees, costs and expenses, including those available under 15 U.S.C. § 1117(a), and any other applicable law;

F. A judgment and order requiring each Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded; and

G. Such other and further relief as the Court deems just and equitable.

Dated: February 17, 2021

Respectfully submitted,

*s/Saul Perloff*

**Saul Perloff**
Texas Bar No. 00795128
saul.perloff@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone (210) 224-5575
Facsimile (210) 270-7205

**ATTORNEYS FOR PLAINTIFF**
**RED HOOK LOBSTER POUND LLC**